# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

|                              |     |                    |
|------------------------------|-----|--------------------|
| DONALD S.,[1]                | )   |                    |
|                              | )   |                    |
| Plaintiff,                   | )   |                    |
|                              | )   | CIVIL ACTION       |
| v.                           | )   |                    |
|                              | )   | No. 24-2472-JWL    |
| FRANK BISIGNANO,[2]          | )   |                    |
| Commissioner of Social Security, | ) |                |
|                              | )   |                    |
| Defendant.                   | )   |                    |
|                              | )   |                    |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.    Background

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On May 7, 2025, Mr. Bisignano was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Bisignano is substituted for Acting Commissioner Lee Dudek as the defendant. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed an application for SSDI benefits on June 17, 2016, alleging disability beginning November 16, 2012.  (R. 128-35, 1186).  After exhausting administrative remedies before the Social Security Administration (SSA), remands for further consideration by the United States District Court for the Western District of New York and by this court in the District of Kansas, and a final remand by the SSA's Appeals Council, Plaintiff filed this case seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  (Doc. 1), (R. 637-48, 1292, 1350-52).  Plaintiff claims the ALJ assessed an erroneous residual functional capacity (RFC) because he erred in weighing the opinion evidence pursuant to 20 C.F.R. § 404.1527.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the

2

evidence not only <u>supports</u> [a contrary] conclusion, but <u>compels</u> it." <u>I.N.S. v. Elias-Zacarias</u>, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005); <u>see also</u>, <u>Bowling v. Shalala</u>, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues <u>de novo</u>, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in <u>Bowling</u>)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the error alleged in Plaintiff's Social Security Brief.

## II.    Discussion

The court first discusses some preliminary issues before addressing Plaintiff's allegations of error. The court notes two findings the parties do not contest. First, the time for consideration of disability in this case is between November 16, 2012, when Plaintiff alleges his disability began and December 31, 2017, which the ALJ found to be Plaintiff's date last insured. (R. 1188). Second, the ALJ found Plaintiff has no past relevant work within the meaning of the Act and the regulations to consider here. (R.

4

1202, finding, no. 9).  The court also notes that the treating physician rule as contained in

20 C.F.R. § 404.1527 must be applied in this case, based on Plaintiff's disability

application filed in June 2016.  (R. 128-35).

Finally, the Commissioner argues Plaintiff has waived any argument of error in

the ALJ's discounting Plaintiff's allegations of disabling symptoms because he did not

challenge that decision in his initial Social Security Brief.  (Comm'r Br. 10) (citing

Keyes-Zachary v. Astrue, 695 F.3d 1156, 1161 (10th Cir. 2012).  Plaintiff responds that

he argued in his initial brief that the ALJ erred by failing to address, as required by Social

Security Ruling (SSR) 16-3p and Frey v. Bowen, 816 F.2d 508, 515-16 (10th Cir. 1987),

the reason Plaintiff pursued only intermittent treatment.  (Reply 2 n.2, 5-6, n.7, 11 nn.13-

15).  The court will address Plaintiff's argument relating to intermittent treatment, but as

the Commissioner argues, Plaintiff did not allege error in discounting Plaintiff's

allegations of disabling symptoms in his initial brief and has thereby waived that

argument.  See, e.g., M.D. Mark, Inc. v. Kerr‒McGee Corp., 565 F.3d 753, 768 n. 7 (10th

Cir.2009) ("[T]he general rule in this circuit is that a party waives issues and arguments

raised for the first time in a reply brief.").

Plaintiff's Brief addresses alleged errors in the ALJ's evaluation of medical

opinions related to mental limitations in Plaintiff's RFC separately from alleged errors in

the ALJ's evaluation of medical opinions related to physical limitations in Plaintiff's

RFC.  Compare Pl. Brief 5-21, with 22-28.  While the court has no objection to this

approach and notes the ALJ addressed the medical opinions similarly, dealing first with

those opinions relating to mental functioning (R. 1195-98), and then with those opinions

relating to physical functioning, id. 1198-1201, the court will address the alleged errors in a single section because the legal standard for evaluating medical opinions is the same whether the opinion relates to mental functioning or to physical functioning.  20 C.F.R. § 404.1527 (2023).

As Plaintiff recognizes, the court's review in this case is limited to two questions; whether the ALJ applied the correct legal standard and whether substantial evidence— such relevant evidence as a reasonable mind might accept as adequate to support a conclusion—supports the Commissioner's final decision—the ALJ's decision in this case.  (Pl. Br. 4).  So long as the ALJ's decision is supported by substantial evidence as defined above, it is irrelevant if substantial evidence in the record would also support a contrary decision.  Lax, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.") (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  Thus, it is necessary for a Social Security claimant to show the error in the ALJ's decision, not merely that there is substantial evidence supporting a contrary finding or that there is a "better" finding.

**A.     The Standard for Evaluating Medical Opinions for Cases Filed Before March 17, 2017.**

For claims filed before March 27, 2017, the regulations provide, "[m]edical opinions are statements from acceptable medical sources[3] that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations.  Id. § 404.1527(c).  A physician who has treated a patient frequently over an extended period is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  But "the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."  Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

---

[3]20 C.F.R. § 404.1502 defines "acceptable medical source."

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2).

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'"  Id. at 1300.  If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record.  Id.  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id. (emphasis added).

If the treating source opinion is not given controlling weight, the inquiry does not end.  Id.  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician's opinion. Robinson, 366 F.3d at 1083.  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  Watkins, 350 F.3d at 1300.  Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in

the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's

attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R.

§ 404.1527(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)

(citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's

decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight

the adjudicator gave to the treating source's medical opinion and the reasons for that

weight.'"  Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins,

350 F.3d at 1300).

After considering the factors, the ALJ must give reasons in the decision for the

weight he gives the treating source opinion.  Watkins v. Barnhart, 350 F.3d at 1301.

"Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate

reasons' for doing so."  Id.  (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996)

(quoting Frey, 816 F.2d at 513).

## B.    The ALJ's Findings

The ALJ found that through his date last insured Plaintiff was able to:

lift and carry up to twenty pounds occasionally and lift or carry up to ten
pounds frequently; stand and/or walk for six hours out of an eight-hour
workday; and sit for six hours out of an eight-hour workday.  The claimant
could occasionally climb ladders, ropes and scaffolds, climb ramps and
stairs, stoop, kneel, crouch, and crawl; and could frequently balance as
defined by the SCO [(Selected Characteristics of Occupations in the
Dictionary of Occupational Titles)].  The claimant could frequently handle,
finger and feel bilaterally.  The claimant could occasionally work at
unprotected heights, with moving mechanical parts, and in vibration.  The
claimant could understand, remember and carry out simple, detailed but not
complex instructions and cannot perform work requiring a specific

production rate, such as assembly line work or work that requires hourly
quotas, with only occasional judgment and changes in a routine work
setting. The claimant could occasionally respond to and have interaction
with supervisors, coworkers and the general public.

(R. 1192) (finding no. 5, bold omitted).

He found that Plaintiff's allegation of symptoms "concerning the intensity,

persistence and limiting effects of [his] symptoms are not entirely consistent with the

medical evidence and other evidence in the record." Id. 1193.

The ALJ evaluated the opinions of nine acceptable medical sources, one other

medical source and the Department of Veteran's Affairs' disability ratings. Id. 1195-

1201. The ALJ accorded some weight to Dr. Hennessey's medical opinion because it

was supported by the medical record, but also noted the record "supports moderate

limitations in understanding, remembering and applying information and adapt and

manage oneself." He found,

Further [mental] limitations are not supported by the medical record
including treatment records, for example, mental status exams were normal
(Ex. 4F/30 showing normal MSE); the claimant has never been hospitalized
for psychological complaints (Ex. 4F/30-31, 32, 33, 61, 64, 67; see p. 68,
intermittently feels anxiety; see p. 68, attends 1-2 game nights a week; not
taking medications as prescribed see p. 31). Moreover, the claimant
testified that he was able to live alone, he did his own laundry, prepared
meals, drove unless he was overly anxious, went to stores six times a
month, reads books, and used the internet to research family history.

Id. 1195.

The ALJ evaluated two medical opinions by Dr.Tzetzo. He noted her first

opinion, expressed several times in Exhibits 1F and 2F, that Plaintiff has a social

impairment and is capable of managing his financial affairs. Id. He afforded her opinion

10

that Plaintiff is capable of managing his financial affairs significant weight, repeating the
reasons quoted above for Dr. Hennessey's opinion, but discounted the opinion of a social
impairment because "a 'social impairment' is vague and not a specific functional
limitation." (R. 1196). He noted that in another opinion in August 2016 Dr. Tzetzo
opined Plaintiff "had occupational and social deficiencies in most areas as in March
2016, during [Plaintiff's] Compensation and Pension exam" but that, "Individual
unemployability does not appear indicated at this time." Id. He accorded some weight to
this opinion but discounted it because; it "is vague and provides no specific functional
limitations, … whether a claimant can work is an opinion reserved for the Commissioner,
[and] the opinion is not consistent with opinions of Alicia Saldana, M.D. that almost all
mental ability checkboxes are unlimited or very good." Id.

The ALJ accorded little weight to Dr. Skiffington's opinion, stated in several
treatment notes, that Plaintiff is unable to get and maintain employment because
"whether or not a claimant can work is an opinion reserved to the Commissioner." Id.
He accorded only some weight to the opinions presented in a Mental Residual Functional
Capacity Questionnaire completed by Dr, Skiffington. For that questionnaire he found,

> the severe limits are excessive and are not supported by the overall record
> which shows that the claimant only intermittently sought treatment, he was
> never in crisis or seen for emergent psychological treatment, and he was
> never hospitalized for symptom exacerbations. Further, the opinion is not
> consistent with the opinion of other medical examiners including Alicia
> Saldana, M.D. who indicated that the claimant's functioning was very good
> or unlimited in almost all every [sic] area of functioning (Ex. 8F) and
> Hillary Tzetzo, M.D. who observed that unemployability was not indicated
> by the claimant's symptoms and manifestations (Ex. 4F/99). Further
> limitations are not supported by the medical record including treatment
> records (See Ex. 4F/30 showing normal mental status exam, the claimant

11

had never been hospitalized; pp. 30-31,32,33, 61,64, 67; p. 68 [and only]
intermittently feels anxious).

(R. 1196-97).

The ALJ accorded only some weight to Dr. Saldana's opinion, discounting it

because she provided few functional limitations in her opinion, found Plaintiff's abilities

limited but satisfactory in four areas with no limitations in 20 areas and "was only

seriously limited in the one area -- completing a normal workday and workweek without

interruptions form [sic] psychologically based symptoms." Id. 1197. He found, "the

evidence does not support the absentee level, particularly given the claimant's ability to

participate in gaming activities with friends several nights a week, normal mental status

exams found throughout the record, the claimant's only intermittent participation in

therapy, and he was never in crisis or hospitalized for symptoms (See Ex. 4F/30 showing

normal MSE, never been hospitalized; pp. 30-31,32,33, 61,64, 67; p. 68 intermittently

feels anxious). Id.

The ALJ found Dr. Reynolds's opinion of total occupational and social

impairment worthy of only some weight because it is inconsistent with his opinion

Plaintiff can manage his own funds and with other record opinions such as Dr. Saldana's

opinion Plaintiff "was able to perform without limitations or very good in almost all

areas," and "Dr. Tzetzo's opinion that unemployability did not appear indicated." Id. at

1197-98. The ALJ further relied on his finding that

Further limitations are not supported by the medical record including
treatment records (for example, see Ex. 4F - e.g. p 30 showing normal
mental status exams and indicating that the claimant had never been

12

> hospitalized; p 30-31,32,33, 61,64, 67; see p. 68 -- "intermittently feels
> anxious"; p. 68 – attends 1-2 game nights a week; not taking medications as
> prescribed (Ex. 4F/31) and the testimony of the claimant that he was able to
> live alone, did laundry, prepared meals, drove unless overly anxious, went
> to stores 6 times a month, read books, and used the internet for family
> history.

(R. 1198). He also noted, "whether the claimant can work [(total occupational

impairment)] is an opinion reserved for the [C]ommissioner." Id.

The ALJ accorded some weight to Dr. Duffy's opinion from Plaintiff's

psychological consultative exam. Id. He discounted the opinion because the opinion

Plaintiff "had mild to moderate difficulties in attention and concentration" is internally

inconsistent with the opinion he "could perform complex tasks" because "mild to

moderate severity in functioning is commensurate with simple, unskilled tasks." Id.

Once again, the ALJ restated his reasons for finding additional limitations are not

warranted. Id. (emphasis added).

The ALJ then turned his attention to opinions regarding Plaintiff's physical

functioning, beginning with the opinion of Family Nurse-Practitioner (FNP), Ms.

Pickering. Because the application for benefits in this case was filed before March 27,

2017, Ms. Pickering is not an "acceptable medical source" within the meaning of the

Social Security regulations but is an "other medical source." 20 C.F.R. § 404.1502(a)(7)

(a "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice

nurse with another title, [is an acceptable medical source] for impairments within his or

her licensed scope of practice (only with respect to claims filed (see § 404.614) on or

after March 27, 2017)" (underline added); see also, SSR 06-03p, 2006 WL 2329939, *4-6

(SSA Aug. 9 2006) ("other" medical source opinions will be evaluated using the

regulatory factors for evaluating medical opinions, 20 C.F.R. § 404.1527; and the ALJ

"generally should explain the weight given to opinions from these 'other sources,' or

otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant

or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may

have an effect on the outcome of the case."). The ALJ noted, "Ms. Pickering's opinions

appear to be based primarily on the claimant's subjective statements" and she

> did not give functional limitations[,] but her opinion that typing would
> cause his wrists to flare up has been considered in formulating the residual
> functional capacity (RFC). Further limitations are not supported by the
> treatment records including the claimant's testimony that [he] was able to
> lift 10-20 pounds from the ground, performed household chores including
> laundry, prepared meals, drove, and went to the stores six times a month.
> Additionally, the claimant reported that he played board games and
> performed family history research using the internet which requires some
> manipulative functioning.

(R. 1199).

The ALJ evaluated the opinions formulated by Dr. Miller based on Plaintiff's

consultative physical exam. He gave her opinion only some weight. He discounted her

opinions of vocal cord dysfunction and joint limitations as "based on the claimant's

subjective reports because no abnormalities were noted in his joints, or his voice," and

her "opinion is vague and without specific functional limitations." Id. He noted, "Further

limitations than those in the residual functional capacity stated above are not supported

by the medical record, Dr. Miller's own grossly normal exam findings, and the claimant's

own reports of functioning that he could lift 10-20 pounds from the ground, walk 1/2 mile

at one time, drove, lived alone, performed household chores such as laundry, and went to the store six times a month." Id.

Dr. Bessent, a medical consultant, reviewed the medical record and completed a Physical RFC Assessment for the SSA on May 16, 2018. The ALJ explained,

> This opinion is given some weight. The overall record is consistent with the light exertional range, however the record also supports carpal tunnel with neuropathy that supports manipulative limitations and his severe impairments are also consistent with environmental limits as set forth in the residual functional capacity stated above. Further limitations are not supported by the medical record including treatment records showing normal gait, an ability to walk on his heels and toes without difficulty, full squat, normal stance, and no acute distress.

(R. 1199). The ALJ also explained his determination was supported by Plaintiff's reported abilities as noted when evaluating Dr. Miller's opinion above. Id., at 1199-1200.

The ALJ acknowledged that a functional capacity exam (FCE) was completed by Mr. DiRienzo, a physical therapist, on May 16, 2018. Id. 1200. He recognized that Mr. DiRienzo was not an acceptable medical source but an "other medical source," and he considered Mr. DiRienzo's report along with Dr. Venkatram's medical opinion because it had been included with and referenced in Dr. Venkatram's Physical RFC Questionnaire completed on June 5, 2018. Id. The ALJ accorded Dr. Venkatram's opinion only some weight and explained his rationale:

> the opinions of stand-walk for one hour, rarely move his neck, never climb ladders/ropes/scaffolds, manipulative limitations of 50% bilaterally, reaching 80% bilaterally with unscheduled breaks, the need to elevate legs and the additional limitations that the claimant would be unable to sustain work and would be absent more than four days a month are not supported by the FCE exam findings and further, because he only saw the claimant from November 16, 2017 to June 7, 2018 (I note that most of this time was after the date last insured of December 31, 2017) and his opinion was

rendered after the date last insured.  Further, his opinion is not well supported by own [sic] treatment records which show normal gait, range of motion, etc. (Ex. 4F/43, 51, 132); His opinion that the claimant is incapable of even low stress jobs is not supported by the largely normal mental status exams and activities of daily living (See Ex. 1F/59, 67, 72, 73; Ex. 4F, p. 30 showing normal mental status exams; never been hospitalized; p. 30-31, 32, 33, 61, 64, 67; see p. 68 -- attends 1-2 game nights a week;).  Further limitations are not supported by the medical record including treatment records normal gait, can walk on toes/heel without difficulty, full squat, stance normal, and no acute distress (Ex. 2F/3), and the testimony of the claimant that [he] could lift 10-20 pounds from ground, walk 1/2 mile at one time, was able to live alone, did his own laundry, prepared meals, drove unless overly anxious, and went to stores six times a month.

(R. 1200).

The ALJ accorded the various disability ratings assessed by the VA little weight because disability ratings are an issue reserved to the commissioner, the SSA and the VA use different standards for evaluating disability, and the VA disability "ratings do not rely on a function-by-function analysis but are based largely on uncorroborated subjective allegations about symptoms and are often not supported by the longitudinal record." Id. 1201.

### C.    Analysis – Intermittent Treatment

Plaintiff has shown no error in the ALJ's reliance on Plaintiff's intermittent treatment to discount Plaintiff's allegations of disabling symptoms.  Plaintiff argues the ALJ may not rely on a failure to seek or follow prescribed treatment without considering possible reasons why Plaintiff did not seek or comply with the treatment prescribed—as required by SSR 16-3p.  (Pl. Br. 10).  In his Reply Brief, Plaintiff points out that the Tenth Circuit in Frey required the same consideration before relying on a failure or refusal to pursue treatment.  Frey, 816 F.2d at 517.

16

As Plaintiff suggests, the ALJ discounted Plaintiff' allegations of disabling symptoms, in part, because his treatment was intermittent.  Evidence cited by the ALJ in his decision clearly demonstrates he considered possible reasons Plaintiff's treatment was intermittent and why he did not follow prescribed treatment.  And the evidence cited demonstrates the ALJ was justified in relying on the fact of intermittent treatment to discount Plaintiff's allegations of disabling symptoms.  While the ALJ could have articulated his rationale more fully, consideration, not articulation is the requirement of both SSR 16-03p and Frey and the ALJ's decision is sufficient for the court to follow his rationale.

In the decision, the ALJ discussed his findings in this regard.  He noted Plaintiff's diagnoses of mental impairments, "depression (noted to be in remission at 3F/5 [R. 327, 7/26/2016]), anxiety and panic disorder without agoraphobia (Ex. 1F/53 [R. 263, 1/26/2016]), and PTSD (noted to be stable on medications at Ex. 1F/33, 86 [R. 243, 5/04/2016; 296, 10/01/2015])."  (R. 1193).  The ALJ found, "The claimant's mental impairments were well controlled with medications and intermittent counseling.  Moreover, the claimant admitted not being compliant with his prescribed treatment regimen."  Id.  The ALJ noted Plaintiff testified to frequent vomiting due to anxiety, but he found, "there is little to support the claimant's testimony that he vomited 15-20 times a month during the relevant period.  An exam of the ear, nose, and throat was notable for minimal turbinate swelling, but other findings were normal."  Id. 1194.

The ALJ noted that at a treatment session with Dr. Saldana in September 2015 Plaintiff requested counseling services.  Id. 1195 (citing Ex. 1F/92 (R. 302)).  The ALJ

17

noted a month later that "[p]rogress notes show [Plaintiff's] depression and anxiety decreased with treatment." Id. (citing Ex. 1F/78 (R. 288)).  The ALJ noted that Plaintiff reported in 2016 "he was not taking his medications regularly and he struggled with increasing anxiety.  [He] also reported struggling with driving <u>for more than fifteen minutes</u> at one time due to anxiety." Id. (underline added) (citing 1F/39/49, 1F/43 (R. 249, 254[4], 259)). The ALJ noted that Plaintiff later reported to Dr. Saldana that he sees Dr. Skiffington close to his home but cannot afford gas to go far.  Id. (citing Ex. 4F/32, (R. 360) (treatment note dated May 30, 2017, "He sees Dr. Skiffington at Lockport clinic <u>which is close to him</u> and attends ADHC once a week every Thursday.  He states he cannot afford the gasoline to and fro[m] ADHC <u>quite far from him</u>.") (underlines added)). The ALJ noted later that Plaintiff was again not taking his medication as prescribed.  Id. (citing Ex. 4F/31 (R. 359) (Dr. Saldana's treatment note dated October 24, 2017, "He has not been taking his medications upon review of his medication reconciliation, still with five refills.  He states that he is anxious about taking medications.  He is also missing his appointments with PRRC and Dr. Skiffington because he is not driving.  Encouraged to be compliant with medications and try to make it to his treatment program.")).

Plaintiff, in October 2015 reported his anxiety decreased with treatment, which at that point included medication for his anxiety.  (R. 288).  Later, in March 2016, he reported he was not taking his medication regularly and he gets anxious and is afraid to drive. Id. 259.  In April 2016 he told Dr. Skiffington he does not drive more than fifteen

---

[4] The ALJ cited Ex. 1F/43 (R. 253) for Plaintiff's struggling with driving more than fifteen minutes due to anxiety.  The assertion is found at Ex. 1F/44 (R. 254).

minutes due to anxiety.  Id. 254.  In May 2017, Plaintiff reported he forgets his second dose of medication, so Dr. Saldana increased his dosage and prescribed it only in the morning.  Id. 360.  Plaintiff also reported he sees Dr. Skiffington at Lockport clinic which is close but cannot afford gas to and from ADHC because it is "quite far from him."  Id. In October 2017, Plaintiff reported he could not drive because of anxiety, but he was still not taking all his medication and alleged anxiety about taking medication.  Id. 359.

As the discussion above makes clear, Plaintiff's anxiety improves when he takes his medication and attends his therapy sessions, and when following this treatment plan, he can drive for at least fifteen minutes.  It also reveals he can afford gas to drive to his close appointments with Dr. Skiffington.  Yet after being pressed on why he was missing his appointments with Dr. Skiffington, he deflected that driving itself causes anxiety despite admitting at the hearings that he went to a game store about five miles away and played games with friends about six hours (R. 1233, 1236) and he goes to stores to shop six times a month.  (R. 1253-54); see also, Hearing decision, R. 1191.  Plaintiff told Dr. Skiffington he went to two or three gaming events each week.  (R. 396) ("He has four gaming events scheduled every week and misses one or two of them … due to anxiety.")

Plaintiff argues before this court, "The records reflect Plaintiff was not able to afford gas to see his therapist twice weekly."  (Pl. Br. 10) (citing R. 360).  However, as demonstrated above, that is precisely the opposite of what the record Plaintiff cites reflects.  As quoted above, Plaintiff reported to Dr. Saldana that "he sees Dr. Skiffington at Lockport clinic which is close to him," but "he cannot afford the gasoline to and fro[m]

19

ADHC quite far from him." (R. 360). Plaintiff has not shown error in the ALJ's finding his treatment was intermittent.

### D.    Analysis – Evaluation of Medical Source Opinions

The ALJ provided six single-spaced pages in his decision explaining the weight he accorded medical source opinions and VA disability ratings, and his rationale for that weight. (R. 1195-1201). Plaintiff has the burden to demonstrate error in that evaluation, not merely that record evidence could also support a different decision or better supports a different decision. He must demonstrate that the evidence compels a different decision. He has not done so here. When addressing the ALJ's reasons for discounting each medical source's opinion, Plaintiff does not demonstrate error in the rationale given by the ALJ or point to record evidence that compels a different finding, but points to record evidence which might support a different finding and argues the ALJ should have reached that finding.

For example, when addressing the ALJ's evaluation of Dr. Skiffington's opinions, Plaintiff does not argue the evidence does not support the ALJ's finding Dr. Skiffington's opinion of severe limits is inconsistent with Dr. Saldana's opinion that Plaintiff's functioning was very good or unlimited in almost every area of functioning and is inconsistent with Dr. Tzetzo's opinion that unemployability was not indicated. Rather, he argues Dr. Saldana's opinion was consistent with other aspects of Dr. Skiffington's opinion and Dr. Tzetzo's opinion had been discounted by the ALJ and should have been further discounted for other reasons. Such argument seeks only to have the court reweigh the evidence, which it may not do.

20

Plaintiff also appears to allege error in applying the correct legal standard to evaluate De. Skiffington's opinion. He argues, "The ALJ did not consider even most of the regulatory factors; he certainly did not provide any deference to Dr. Skiffington's treating physician status. (Pl. Br. 7) (citing R. 1196). Plaintiff misunderstands the application of the regulatory factors to evaluate a medical opinion. The regulations provide factors to be <u>considered</u> in evaluating medical source opinions, but they do not require a factor-by-factor articulation of the factors. <u>Oldham</u>, 509 F.3d at 1258; <u>Watkins</u>, 350 F.3d at 1300. Here, it is clear the ALJ did not accord controlling weight to Dr. Skiffington's opinions because he found them inconsistent with other substantial evidence in the case record: <u>i.e.</u>, Dr. Saldana's opinion of very good or unlimited functioning, Dr. Tzetzo's opinion unemployability was not indicated, normal mental status exams, and Plaintiff has not been psychiatrically hospitalized during the period at issue. (R. 1196-97). And substantial record evidence—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion—supports those findings. While the ALJ did not discuss each regulatory factor, Plaintiff does not demonstrate he did not consider the regulatory factors. Moreover, the ALJ in fact accorded deference to Dr. Skiffington's opinion concerning mild and moderate limitations and explained his bases for discounting Dr. Skiffington's opinions.

Plaintiff notes the ALJ accepted Dr. Skiffington's opinion of mild to moderate limitations, presumes Dr. Skiffington's opined limitations required greater limitations than assessed by the ALJ, and argues the ALJ erroneously failed to account for those limitations. However, Dr. Skiffington did not assess specific functional limitations

21

regarding mild to moderate limitations and Plaintiff ignores the ALJ's finding further

limitations are not supported.  Plaintiff does not demonstrate the ALJ's rationale is

unsupported by the evidence or that the evidence compels a different conclusion.

Plaintiff needs more than allegations or innuendo to demonstrate error.

      Plaintiff argues it was error to find that Dr. Skiffington's opinion Plaintiff is

unable to get and maintain employment is an opinion on an issue reserved to the

Commissioner because Dr. Skiffington did not opine Plaintiff was disabled or unable to

work as suggested in 20 C.F.R. § 405.1527(d)(1).  Plaintiff is correct that Dr. Skiffington

did not use those terms.  However, Congress has provided a statutory definition of

"Disability."  42 U.S.C. § 423(d)(1)(A) – "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  The statute provides further explanation:

> An individual shall be determined to be under a disability only if his
> physical or mental impairment or impairments are of such severity that he
> is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial
> gainful work which exists in the national economy, regardless of whether
> … a specific job vacancy exists for him, or whether he would be hired if he
> applied for work.

42 U.S.C. § 423(d)(2)(A).  Thus, Dr. Skiffington's opinion Plaintiff is unable to get and

maintain employment is an opinion on an issue reserved to the Commissioner (disability,

as statutorily defined) and the ALJ properly accorded it little weight.

      Plaintiff argues the opinion of S. Hennessey appears to be the opinion of a single

decision maker (SDM) erroneously accorded some weight as a medical opinion of a Dr.

Hennessey because the signature block on the Psychiatric Review Technique (PRT) and on the Mental Residual Functional Capacity (MRFC) (S. Hennessey) did not include a medical professional designation.  This argument must be rejected for three reasons.  The Disability Determination and Transmittal form containing the Commissioner's determination of "Not Disabled" is signed in block 32A, "Physician or Medical Spec.," by S. Hennessey and reflects a Medical Specialty Code of 38 (Psychology);[5] Dr. Hennessey is an employee of the SSA or the New York State Disability Determination Service working for the SSA, and his medical qualifications are known to the SSA; and most importantly, the POMS provides, "In decisions that are not fully favorable [(such as the decision in this case)], only a psychiatrist or psychologist is to perform the analysis and decide the mental functional capacity."  POMS DI 24510.060(A)(2)(a), Mental Residual Functional Capacity Assessment.  Plaintiff has not provided even a hint of evidence that Dr. Hennessey is an SDM.  Plaintiff's further argument that Dr. Hennessey's "opinions are not substantial evidence to support the ALJ's decision" simply ignores the definition of "substantial evidence" noted hereinabove.  (Pl. Br. 16, n.9).

Plaintiff's complains Dr. Duffy's opinions should have been accorded no weight because the ALJ found them internally inconsistent, and Plaintiff argues they are not substantial evidence and are entitled to less weight than a treating physician's opinion.

---

[5] The SSA's Program Operations Manual System requires that the Specialty Code for "the responsible medical or psychological consultant" be include in the Disability Determination and Transmittal form.  POMS DI 24501.004(A)(2) (emphasis added). Thus, Dr. Hennessey must be a psychological consultant, and therefore a medical professional qualified to issue a medical opinion.

Id. 16-17.  Lacking evidence compelling a different finding, Plaintiff's argument merely asks the court to reweigh the evidence in his favor.

Plaintiff also claims error in evaluating Dr. Venkatram's treating source opinion. First, he claims the ALJ erred in discounting this opinion because it was issued after Plaintiff's date last insured.  (Pl. Br. 24-25).  He argues this is error because Dr. Bessent, an agency medical consultant, also issued an opinion after the date last insured and the ALJ did not discount his opinion based on that fact. Id.  Plaintiff misses the salient reasons for this difference.  Dr. Bessent's opinion was premised on a review of the evidence relating to the period before the date last insured (R. 491) and specifically stated his RFC assessment is for the date last insured, id. 492, whereas Dr. Venkatram based his opinion upon his treatment of Plaintiff both before and after the date last insured, id. 500, and did not limit his opinion to Plaintiff's condition on or before the date last insured.  Id. 500-04.

Plaintiff next complains that the ALJ erred when he discounted Dr. Venkatram's opinion because he only treated Plaintiff from November 16, 2017, to June 7. 2018, and argues the doctor actually treated Plaintiff long before that.  (Pl. Br. 25-26) (citing record evidence of Dr. Venkatram's treatment).  The ALJ cited exhibits 7F and 15F as the duplicate locations of Dr. Venkatram's opinion.  (R. 1200).  Dr. Venkatram's opinion is provided on a "Physical Residual Functional Capacity Questionnaire" form, and the first item on the form is labeled "Frequency and length of contact:" and presents a blank space wherein Dr. Venkatram entered "Seen Nov 16, 2017, f/u 6/7/18." (Sic).  (R. 500, 1172). Clearly, the ALJ relied on Dr. Venkatram's response when he found that Dr. Venkatram

"only saw the claimant from November 16, 2017 to June 7, 2018," and he is entitled to do so. This is even more justified since all of Dr. Venkatram's treatment records cited by Plaintiff are VA records which intermingle treatment records from many providers and many of the pages within a multi-page treatment record do not have the date of treatment or the provider's name on that page. Plaintiff has shown no error in the ALJ's evaluation of Dr. Venkatram's opinion.

The court notes most of Plaintiff's arguments merely seek the court to reweigh the evaluations and substitute its judgment (or Plaintiff's judgment) for that of the ALJ. The court will not address the remaining opinions specifically but will address several remaining issues in the interest of full consideration

Plaintiff argues the ALJ erred to rely on Plaintiff's playing board games during the period at issue because Plaintiff testified he played with people he knew, the games were scheduled twice a week and he missed a couple of games every couple of weeks. (Pl. Br. 19). Plaintiff argues that if one assumes for the sake of argument missing two games every two weeks that would mean 52 absences every year and 4.3 absences each month. Id. However, Plaintiff's argument merely supports the ALJ's finding Plaintiff's allegations are not consistent with the record evidence. In December 2017, contemporaneous with the period at issue, Plaintiff reported "He has four gaming events scheduled every week and misses one or two of them every week due to anxiety." (R. 396). Plaintiff has simply shown nothing beyond speculation or supposition in this regard and has, consequently, shown no error in the ALJ's evaluation.

Plaintiff argues that he was assessed with a Global Assessment of Functioning (GAF) score of 42 during the relevant period and it was error for the ALJ not to discuss this score. (Pl. Br. 21). The court has previously discussed an ALJ's failure to discuss GAF scores more than five years ago, noting that the American Psychological Association's <u>Diagnostic and Statistical Manual of Mental Disorders</u> (5th ed. 2013) (DSM-V) discontinued the use of GAF scores because of "its conceptual lack of clarity ... and questionable psychometrics in routine practice." <u>William Edward S. v. Saul</u>, Civ. A. No. 19-1061-JWL, 2020 WL 569806 at * (D. Kan. Feb. 02, 2020). The court discussed a message from the SSA on the subject and Tenth Circuit case law and concluded, "If the ALJ's failure to discuss this GAF score was error, that error was harmless." <u>Id.</u> at 10.

Finally, Plaintiff points out FNP Pickering found Plaintiff's wrist condition caused him difficulty with the typing requirements of his job in the military, and while the ALJ stated he considered Ms. Pickering's opinion typing would cause Plaintiff's wrists to flare up, he did not include typing limitations in the RFC. Plaintiff thereby implies that some limitation in typing should have been included in the RFC but does not point to record evidence compelling a particular typing limitation despite the ALJ's finding Ms. Pickering did not provide functional limitations. Moreover, none of the representative occupations found by the ALJ appear to require significant, if any, typing. The only representative occupation obviously presenting the potential for typing is the occupation of price marker. However, the job description clarifies the issue, for it only requires the worker to "Mark[] and attach[] price tickets" and to "Mark[] selling price by hand."

DICOT 209.587-034, 1991 WL 671802 (G.P.O.).  Plaintiff has not shown error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated June 17, 2025, at Kansas City, Kansas.




s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**